May it please the Court, my name is Michael Lichtenstein. I'm here together with my colleague Sarah Klasper and we represent J.J.F. Management Services, the appellant in this case. Your Honors, there are two issues before this Court today. The first is whether the lower court erred by ignoring the appellant's senior lien that was granted in the final debtor in possession financing order in the bankruptcy case. And the second is whether or not the Bank. In terms of the procedural history, Your Honor, I'll go through it briefly. In 2019, the lower court entered a judgment against defendants Rent-A-Wreck of America, Inc. and Bundy American in the amount of about $83,000. Subsequent to that, those two entities filed Chapter 11 bankruptcy petitions in Delaware. In that case, what's important is that a debtor in possession financing order, which I'll discuss, was entered and then subsequently those cases were dismissed. Upon dismissal, the appellee sought to garnish a bank account at Wells Fargo Bank. Why was the bankruptcy case dismissed? The Court was fairly specific about its reasoning, wasn't it? Your Honor, it was a long decision. The Court was specific with respect to that the Court felt that the bankruptcy had not been filed in good faith. That is correct. Good faith being an element of the issue that's presented before us, is it not? Well, Your Honor, first of all, I don't think it actually is. Good faith is a requirement under Maryland law with respect to the particular issue in front of this Court. And second of all, the good faith to file a bankruptcy petition is different than the good faith that was found specifically in the debtor in possession order. I was referring to the District Court's order dismissing the bankruptcy petition. No, I understood, Your Honor. Forgive me if I wasn't clear. What I was suggesting is that the standard for dismissing a bankruptcy and whether or not it was filed in good faith has no implication on whether or not the debtor in possession order that was entered. Right. You're trying to distinguish between the debtor in possession order and I was talking about good faith for I understand, Your Honor. What I was trying to say was that I don't believe that the issue before the Court today relies on good faith. Although the District Court found that from other cases, particularly in California, that good faith is a requirement, I believe that the appropriate standard that the Court should be looking at is whether or not my client has a properly perfected lien, has a valid lien, and good faith is a requirement that I believe the District Court erroneously imposed on my client in reaching its decision. I would say, Your Honor, that even if that were the standard, I believe that we still meet that test because of the specific language that was found in the debtor in possession order. And I'll go through some specific examples, but I don't think the fact that the judge dismissed the bankruptcy for lack of good faith impacts on the debtor in possession order. Now, you're fighting over $83,000. Is that what it is? I'm sorry, Your Honor? You're fighting over $83,000, approximately? That is correct, Your Honor. And that arises from a contempt citation? Yes, Your Honor, that is correct. A civil contempt? Yes, Your Honor. So it's like a fine or the nature of a penalty imposed as a result of a civil contempt citation? That is correct, Your Honor. And something like that would normally take precedence over about everything, wouldn't it? A payment of satisfaction of a civil contempt citation. Most of the time, people go to jail for that. Well, Your Honor, I must respectfully disagree, not with the issue as to whether it takes precedence or not, but I don't think that's the issue before the court. It's not the issue, but for me, the fact that it's a contempt of court, it's a punishment for contempt of court, and it seems to me like that needs to be implemented. Well, Your Honor, I don't disagree that the court has powers that it could enforce to focus on that contempt, but the issue here, as I tried to tell Judge Macedi in the lower court, was not whether my client, according to that judge or according to the appellee, has done bad stuff over the last 10 years. The issue here is simply, do we have an appropriate, perfected lien that comes ahead of them? Do we have an entitlement to write in these specific proceeds? There's no argument, and we're not having a debate about whether or not my client may or may not have to pay that contempt order, that $83,000. The issue is, are these $83,000 that are in this particular Garnish Bank account, are they entitled to that? And we would respectfully submit that the court erred in finding that they are, Your Honor. Do you have any evidence that the DIP order was ever actually litigated? That was ever litigated? Yes, Your Honor. Well, let me – They're usually not, are they? Aren't they? I mean, they're usually entered as a matter of course. Your Honor, I have to – In fact, the examples that you listed were in the DIP order context. Right. Are there bankruptcy petition determinations? Your Honor, I have two responses to that. One, respectfully, and I've been a bankruptcy lawyer for 30 years, DIP orders are not entered into just as a matter of course. The – okay. So do you have any – what is your support for that? Because most of the cases that you cited were inapposite. Well, I would be happy to go through – But if they weren't parties, the parties are different. Well, Your Honor, the cases that I cited, which are Fourth Circuit cases, when you say the parties were different, have ruled for race judicata purposes that if you're a party in interest, and this court has ruled that if you have a pecuniary interest in distribution of creditors like the appellee had in that bankruptcy, then you're a party in interest. This appellee was in fact not only a party in interest, but by its own admission, its in the initial DIP hearing, and had an opportunity to participate in the second DIP hearing. Now, Your Honor, the fact that they chose – Were those claims ever litigated? Was there ever a litigation? I'm still trying to get an answer to my first question. So Your Honor, the answer to that is yes, they were litigated. The DIP order itself says that in the findings of facts and conclusions of law, that after evidence that was presented and after any objections, if any were filed, an appellee filed to file an objection, the court made findings of facts and conclusions of law. Now, the court distinguished between the stipulations that were between related entities, which were the debtors and my client, and had a reservation clause in the DIP order. That reservation clause said that if anybody had any objection and had any issue with respect to whether or not that pre-petition loan had been made and was properly secured, they had until October to file an objection, and if they didn't, those claims were forever barred and waived. To come back to a point that Judge King made, I think the overarching consideration is that all of your activity in this case has had one overriding purpose in mind, and that is that the case is developing into something of a blood feud over this franchise agreement and attempt to retaliate in every way possible against Mr. Schwartz for trying to collect on the contempt judgment and to follow through with the jury's verdict in his favor on the contempt judgment. It's all an attempt to get at Mr. Schwartz, to rob him of the fruits of his jury verdict, and to prevent him from collecting on his contempt judgment, and it's a scorched earth policy which the district court found was undertaken in bad faith, and the district court has the discretion, it seems to me, to accord priority to the attempts at evasion of judicial process, and that's really what the case is kind of about as to whether courts of law can enforce the integrity of the legal process or whether it's going to be subject to an endless series of evasive efforts, and that's what it is all at bottom. Well, Your Honor, again, I must respectfully disagree. I understand what the court's saying with respect to... With respect to what did Judge Wilkinson's description air? What was not correct? Was there ever any evidence presented to the district court that any money actually changed hands between J.J.F. and R.A.W.A. on this belatedly recognized, how many years after default, loan that was purportedly made? Yes, Your Honor. There was evidence actually presented to the district court. We attached the debtor in possession order, and... The question was whether or not there was evidence that money actually changed hands, and that doesn't have anything to do with the debtor in possession order. Well, no, Your Honor, respectfully, if I may disagree, it does have something to do with the debtor in possession order for two reasons. Number one, just with respect to after we had the hearing, when the judge asked him, Judge Mercedi asked me to submit financial statements, there was an affidavit from the controller attached which said the loans were made, and here's the financial statements. He doubted the loans were made. I mean, why is it that these loans were supposedly made 10 years ago, but they were never collected on, and then all of a sudden they become due when Schwartz files for a writ of garnishment, and it's just the timing is just odd in the extreme. The district court said, I don't think these loans were ever made, and it's odd to loan someone money and wait 10 years before attempting to collect on a loan, and that was the problem with that particular transaction, and then any other loans from JJMF to Rawa were parent to subsidiary loans, so they were insider deals, so there's something. Every financial transaction that's being described here as a basis for your position of priority or ability to intervene, they're all fishy, either because they're insider jobs or because they were loans from 10 years ago that were never pursued, and there's something fishy about every single financial transaction. Well, Your Honor, I disagree because, again, if you look at, but let's set aside the pre-petition, because I see I'm running out of time. I want to focus on even if this court had an issue with the pre-petition loans, which the district, which the bankruptcy court, by the way, in the order of dismissal, not in the dip order, in the order of dismissal, the bankruptcy court noted that in the joint pretrial order to which Apelli was a party, there was an in the amount of $2.7 million were made. Excuse me, counsel. How many loans do you know that are made and that there's no activity to collect on the loans, to charge interest on the loans, to find out what the status of the loan is, and all of a sudden, when Mr. Schwartz files for a writ of garnishment, lo and behold, the loan resurrects itself after 10 years of dormancy as a basis for defeating the garnishment proceeding. Now, that just doesn't compute, and the district court found as much. Your Honor, first of all, the loans were, the deposit account control agreements were executed prior to the garnishment proceedings. Excuse me, but second of all, even if you set aside the pre-petition loans, you have the debtor in possession loans where the bankruptcy court made a finding that they were extended in good faith, and the amount of those debtor in possession loans exceed the $80,000 that are sitting in the bank account. Accordingly, even if this court were to look at the pre-petition loan and for some reason ignore the bankruptcy court's findings of facts, that in fact they were made and they were The bankruptcy court's finding was a temporary thing. The bankruptcy court eventually dismissed the petition. Your Honor, that is, I'm sorry, that is not correct. The debtor in possession order specifically has a provision in it which says that it will stand even in the event of a dismissal of the bankruptcy case. And is it your position that that's completely preclusive on the issue before us? Yes, Your Honor, that is exactly my position. And your authority for that is what exactly? My authority for that is the bunch of cases that I cited. Which, first of all, tend to look at the dismissal of bankruptcy positions, not, they don't rely specifically on debtor possession orders. They rely on party participated in, I don't know why Mr. Schwartz didn't actively participate, but I find it very odd that a district court would be bound by a debtor in possession order that you never have been able to demonstrate was actually litigated in an adverse, in any sort of adverse manner on the issue of the curiously after the dismissal of the bankruptcy petition. Has the district court no ability to protect the process from that kind of, what almost looks, well, I think the bankruptcy court called it abusive. Your Honor, I have 10 seconds. May I respond? If it's acceptable to Judge Wilkinson. Thank you, Judge Wilkinson. Your Honor, I would respectfully direct the court's attention to the In Re Verat, it's a Fourth Circuit case at 81F3rd 13N. While Apelli suggests that that case says that you have to actually litigate, that case says the exact opposite. It says that courts are bound by orders that either were litigated or could have been litigated. And I don't think that the Apelli somehow gets to argue, well, it wasn't litigated because they chose not to litigate and they chose not to participate. Moreover, there is evidence of a debtor. You've got some rebuttal time, and you can follow up with that. Thank you, Your Honor. Thank you, Your Honor. Mr. Summons, we're pleased to hear from you. May it please the court, I'm Roger Simmons. I represent Mr. Schwartz and his little company, Renorec of America, incorporated in California. He was the, in effect, the Colonel Sanders of Renorec Company. He created it and began it. And when it was acquired over his objection by Mr. Fitzgerald and the JJF management, he has been in a battle to save his franchise ever since. Why didn't Schwartz object to the DIP order? Your Honor makes a good point. At the time it was filed, and the chronology is important that the court understand in this context, at the time the bankruptcy was filed, it was in the appeal period when they could have come to this court and asked about the contempt sanctions. They chose to change forms, go to Delaware, and file a bankruptcy. They being JJF? It was JJF's decision, because keep in mind JJF is the owner, total owner, of Renorec and Bundy. And it was the manager, JJF, and its owner, John J. Fitzgerald, were the owner and operator of those two entities. So it's a complete insider control arrangement. I'm sorry, I'm not quite following your explanation. Help me with... So it was within the appeal period they chose to go to the... They filed bankruptcy, correct, Your Honor. And what does that have to do with your decision, your failure to object to the DIP order? They filed the bankruptcy under the chronology, I was going to tell you, Your Honor. They  filed bankruptcy on July 29, 2017, just under 30 days after the contempt order was entered. And on June 29, the contempt order, July 24, they filed for bankruptcy. And the DIP arrangement was for new money to finance the bankruptcy. That was negotiated before we ever appeared in the case. And the bankruptcy docket will show you that this is a fact. Our appearance, we listened on the phone, we followed the case like any member of the public, but we did not enter until after the DIP final order was entered on August 30. And on September 1, they announced their intent was to terminate our franchise in the bankruptcy proceeding. Four days later, we filed our notice of appearance, and three weeks later we filed our motion to dismiss the bankruptcy. That was the first time we came into the matter. And if you look at the DIP order, you'll see a premise running throughout that order. I'm happy to give you specific illustrations of it, Your Honor. I'm pretty familiar with it. I was just curious about the decision point. One thing that has not been pointed in any of the briefs is that the DIP order claims that the Bravo and Bundy were in financial stress and desperately needed the money to keep operating. Later, in the motion to dismiss evidentiary hearing, they admitted that was false, that they weren't in financial distress. Their lead counsel stood up and said so. Are you saying that the issue appeared to you to be one between RAWA and Bundy as to the financial stability of the enterprise? Well, it's a private company, yes, Your Honor. That's a fair way to put it. Which would not negatively impact Schwartz's interest? Well, our expectation, we would get fully paid no matter whether they went into bankruptcy or not. And the DIP financing was simply to finance the bankruptcy. But then it became clear on the 1st of August that their purpose was to terminate our franchise. And shortly after that, Your Honor, we entered into it and participated. So the arguments that Mr. Lichtenstein is making, that we participated in the DIP hearing, it's just completely non-factual. It's not in the record. It's not true. We listened. We followed. But we didn't participate. We weren't there. It wasn't litigated. And so you can't argue res judicata on the basis of two parties being in litigation. We weren't there. We came into it after the DIP order was entered. And after that, we took discovery into this privately held company. And after that, we found out they weren't in financial distress. After that, we found out they had lied to and withheld information from the expert, Mr. Looney, who testified in support of the DIP. At the motion to dismiss hearing, Mr. Looney conceded he hadn't been given the business records and didn't know really what the financial package was. And then we see the bankruptcy judge Silverstein saying, and some of our findings are quoted on page four of our appeal brief. They're in the joint appendix. But she made specific statements. The bankruptcy cases were filed because the Fitzgerald people could. These privately owned debtors are not in financial distress. This is page four, joint appendix 136. And she went on to say, it's easy to conclude that Rawa did it because they could. They could gain and take away Schwartz's territory. She went on on page five of our appeal brief. We quote again from the joint appendix. These privately owned debtors, Rawa, have determined that ridding themselves of Mr. Schwartz is worth the cost. And they're able to do so because Mr. Fitzgerald controls both the debt and equity. Toward that end, they changed courts. They went from this appellate court where they had heard the case twice. Judge Mazzetti had heard two trials on it, had heard an evidentiary hearing in a contempt context. They switched to Delaware, filed a bankruptcy, tried to terminate us there. The case was presented again to another court, and that court found again that this was a continuing effort to terminate Schwartz, all part of the pattern in Maryland and the Fourth Circuit. And she threw the case out. And in the course of it, the underlying claims of the VIP, Your Honor, where they make assertions that the company desperately needs the money to keep going, that joint appendix 496, 498, 497, 590, 590, 594, 599, that without this VIP new money, they couldn't keep operating, that was found to be false. And that was the very court they're trying to tell Your Honors whose order has to be given sacrosanct authority here. It itself was found to be a fraud on that court. And so we are reduced to a situation where they're arguing for protection here now in the very context of what's going on, which is Mr. Fitzgerald doing everything in his power to make Mr. Schwartz's life uncomfortable, difficult, and make him jump higher. What is our standard of review? The standard of review in this case is abuse. It's not de novo. You're talking about a judge who enabled them to put on anything they wanted to, who was personally familiar with the entire pattern of bad faith. He cites bad faith at least six times as a basis for his opinion that's under attack here. You will find no case that involves insider financing of the type here that is being argued, as Mr. Lichtenstein does, that the DIP is an order that has to be enforced against the whole world. None of the cases he cites involve a solvent debtor who is not in financial distress, seeking financing in a DIP context in order to protect his own existing capital structure in the entities. That's why he did the DIP as he did it. None of these cases involve a bankruptcy dismissal for lack of good faith. None of these cases involve a solvent DIP seeking bankruptcy creditor or debtor, seeking bankruptcy powers to terminate a valid contract or to avoid a contempt citation. None of these cases involve a ten-year battle of bad faith conduct, a pattern that was reflected, found, and described by Judge Musetti. This case involves an insider consumed with bad faith, consumed with hatred, who had flown out within three months of Mr. Schwartz's filing of his injunction to terminate him and told him he was going to do everything in his power to ruin him. Then he announced to the press he had terminated Mr. Schwartz in order to see how high he could jump. Those were findings that Judge Musetti pointed to, both in the contempt and in other proceedings, as a basis for his feeling of bad faith, along with a whole other pattern where the JJF people announced a false address, false hours, told people, told Schwartz's base that he was out of business, all contrary to the court order telling him to do otherwise. He was ordered to pay the contempt sanctions for this bad faith conduct, and he used the bankruptcy DIP to insulate his assets and create yet another hurt. The contempt sanctions, $83,000, were for attorney's fees and costs, lost profits, and the judge specified them and spelled them out. Caused by his specific conduct in the summer of 2016, and that was when he announced to Schwartz's customer base that he was out of business and that they should go outside the L.A. area to retain or rent cars from the Rent-a-Wreck system. He found him in contempt of Judge Musetti's order. I'm sorry, I missed what you said. He found him in contempt of Judge Musetti's order. Yes, in contempt of Judge Musetti's order. He enforced his own order. Yes, it was his own order. They hadn't appealed it. It was in place. It had been in place for seven years by that point, Your Honor. Six years, I think, wasn't it? I stand corrected, yes. Counsel, do you have anything further you wish to add? No, Your Honor. I think I've said it all. Let me ask my co-panelists. Thank you. We have no further questions. Thank you, Your Honor. Mr. Lichtenstein, you have some time for rebuttal. Thank you, Your Honor. Mr. Lichtenstein, I wanted to ask you the same question I asked Mr. Simmons. What is the standard of review here? Your Honor, the standard of review is de novo. And why would that be? That would be for a couple of reasons, Your Honor. What happened here is the judge denied the motion to intervene because he treated my client as an interested party. And then when we had a hearing, we had a hearing on the merits of, do we have a valid claim or not? The cases that the appellee cites have nothing to do with the abuse of discretion. And the cases that Judge Massetti talks about talk about whether he has discretion to do certain things. But that has nothing to do with the standard of review before this Court. That would seem to me the touchstone of determining whether or not a district court abused its discretion. If it has that discretion, do you dispute that it has that discretion? No, Your Honor. Forgive me if I'm not being articulate, but I think we're talking about two different things. The district court may use its discretion, but when this court reviews it, if the district court has used its discretion with respect to a legal issue incorrectly, then the standard is de novo. And that's exactly what the standard should be here. Well, if it makes a legal error, that's by definition an abuse of discretion. It's still an abuse of discretion review. It's still abuse of discretion review. Well, Your Honor. But a court can enforce its orders, and it should. I mean, court orders have to be obeyed in this country. Your Honor, but respectfully, that's really not the... Things don't work if we don't respect the court order. Absolutely, I agree with you. But that's really not the issue that was before the district court or before this court today. In fact, at the hearing, the judge said to Mr. Simmons, maybe you need to file a motion to enforce a contempt order. That's a whole other issue. I'm not arguing whether my client should have complied with a contempt order or not. That's not the issue before the court on this matter. I understand there's a long history of litigation between the parties, but it's a very focused one issue before this court today. My client has a valid lien, A, because it has pre-petition liens, which it secured and entered into deposit control agreements before the garnishments were ever filed, and B, because there's a debtor... And you want to take what you say is about a lien and put it ahead of the contempt citation? Well... Award, the $83,000 awarded for the contempt. That is correct, Your Honor. How's the court order going to be respected if you're permitted to get it disregarded? Well, I certainly wouldn't want to suggest how Mr. Simmons should go about seeking to enforce his contempt order against my client, but there... He's got $83,000 that Judge Bassetti gave him to punish your client. No, Your Honor, it's not my client. My client is JJF. I don't represent Rent-A-Wreck or Bundy America. He has a vehicle to go after Bundy America... I have a problem seeing how this is a valid lien to begin with. I beg your pardon, Your Honor? You have to accept your characterization of it as a valid lien, and the district court didn't believe it was. And it's very hard to give your client the benefit of the doubt given this pattern of behavior that I've lived with for a very long time. Your Honor, I understand that, but if I can focus just on what Your Honor said with respect, both of you, and Judge... Let's focus on the fact that the bankruptcy petition is dismissed because it's a sham, and the district court found that the lien was a product of an attempt to evade enforcement of a contempt judgment. I don't understand how the lien gets to be valid because there was something wrong with every one of these... And the loans all had serious difficulties with them, whether they were inside jobs or whether they were made at some remote place and time and only revived and resuscitated when the writ of garnishment was filed. So I don't think there's a valid lien to begin with. And even if there were a valid lien, I come back to the point that Judge King was making, which is if a court is going to have the authority to enforce its own orders, garnishment is an equitable proceeding, as I understand it, and there's got to be some discretion in a district court to equitably subordinate the effects of a very fishy loan to an attempt to evade the contempt judgment. The district court can say the DIP order or any lien is going to be equitably subordinated to the attempts here to enforce the court's own orders and to prohibit the evasion, continued unwillingness to pay the contempt judgment. You can throw up all the smoke you want, but that's what's at issue. I'm out of time, Your Honor. All right. Do you want to make one statement? Not one of these that doesn't have a semicolon that goes on and on and on. Make one statement, but have a period in there somewhere. I follow Shakespeare. Brevity is the soul of wit, Your Honor. Your Honor, I think it's important for this court to distinguish between the pre-petition loans and the debtor-in-possession loans. And as I said, even if this court thought that there was something fishy about the pre-petition loans, notwithstanding the bankruptcy court's findings otherwise, you still have the debtor-in-possession loan. And I would suggest, Your Honor, respectfully to this court... Which was an inside job, too. Your Honor, that's not what the bankruptcy court found. The bankruptcy court found that it was necessary. There is a budget attached to it which shows that there's a need for $390,000 which is attached to Joint Appendix 506. Despite it all, the bankruptcy court dismissed the petition. But the DIP order had a provision saying it would stand even in dismissal. All right. We're not going to go round and round forever. Not with my period, Your Honor. All right. There's your period. Okay? Thank you very much. All right. We'll come down and recouncil and move into our next case.
judges: J. Harvie Wilkinson III, Robert B. King, Allyson K. Duncan